266 So.2d 335

**Ted RAINEY, alias**

v.

**STATE.**

**5 Div. 61.**

Court of Criminal Appeals of Alabama.

May 9, 1972.

Rehearing Denied Aug. 1, 1972.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

Samford, Torbert, Denson & Horsley, Opelika, for appellant.

CATES, Judge.

Assault with intent to rob: sentence, fifteen years. Code 1940. T. 14, § 38.

Appellant and an accomplice, according to the State's proof, lured or dragged a drunken victim from a cafe. Beside a country road they left him to sleep off his vapors, severely beaten and deprived of his wallet.

I

■ To corroborate the accomplice's testimony the State adduced that: (1) personnel at the cafe saw the three leave in the defendant's car and (2) on the same night about an hour later an Opelika police officer arrested the defendant for driving under the influence of an intoxicant. On this latter occasion the defendant had on a blood spattered shirt. There was blood on his hands. The defendant sought to account for the blood by two different explanations.

We consider the corroboration met the requisites of Code 1940, T. 15, § 307, as interpreted in Sorrell v. State, 249 Ala. 292, 31 So.2d 82. See also Smothers v. State, 38 Ala.App. 153, 83 So.2d 374.

II

During defense counsel's cross examination of the accomplice the record shows the following incident:

"Q  You've been convicted on at least nine occasions for cashing bad checks, have you not?

"MR. WRIGHT: We object to that.

"THE COURT: Sustained.

"MR. HORSLEY: That is going to the witnesses truth and veracity, if it please the Court.

"THE COURT: Is that a crime involving moral turpitude?

"MR. HORSLEY: No, sir, but I certainly think it shows that the witness is not truthful.

"THE COURT: Just a minute. Sustain the objection.

"MR. HORSLEY: We except.

"THE COURT: Sustain the objection and the Court cites Sec. 434, Title 7, Alabama Code 1940, and cases thereunder cited."

■ Whether or not under a given statute from time to time, "cashing"[1] a bad check was actually in law a crime involving moral turpitude is here beside the point. Defense counsel conceded it was not. Apparently the trial judge based his ruling on the asserted claim of the accomplice's lack of truth and veracity. This latter enquiry is one based on *repute*, not on the facts underlying the repute.

■ Moreover, for the question to come under Code 1940, T. 7, §§ 434 and 435 it would have to be phrased so as to exclude municipal offence convictions, Grammer v. State, 239 Ala. 633, 196 So. 268, e. g., "convicted of the crime of _____." See also Huggins v. State, 271 Ala. 428, 123 So.2d 911.

III

■ The defense offered to show that Rainey had red chalk (used in roofing) on his hands rather than blood. The State's brief says:

"The Appellant contends that the jury should have been allowed to examine the red chalk that the defendant claims was

1. To "cash" can apply to a person who takes the purported check for currency.

Uttering bad checks is sometimes called "passing."

the substance that Sgt. Waller saw on his hands. Appellant cites an A.L.R. annotation in support of this idea. The same A.L.R. annotation, 80 A.L.R. 108 (1932) states:

> " '. . . Where, in a criminal case, experiments by the jurors are made during their deliberations to ascertain facts material to the case, but *not included in the evidence*, this, in general, constitutes such misconduct as will vitiate their verdict.' [Emphasis supplied.]

> "The red chalk was not introduced into evidence. It, therefore, affirmatively appears that it was not error for the chalk not to go to the jury. It would have been error if it had been allowed.

> "The case which the Appellant cites in support of his position, Smith v. State, 261 Ala. 270, 73 So.2d 916, can easily be distinguished from the case at hand. The *Smith* case involved a pistol that was duly admitted into evidence. The red chalk was never admitted."

We have considered the whole record under Code 1940, T. 15, § 389 and conclude that the judgment below is due to be

Affirmed.

PRICE, P. J., and ALMON and TYSON, JJ., concur.

## ON REHEARING

CATES, Presiding Judge.

In Part III of our opinion on original deliverance we quoted from the State's brief particularly with reference to the red chalk which Rainey claims was on his hands rather than blood.

On rehearing appellant states that since he tried to have the chalk put in evidence then Smith v. State, 261 Ala. 270, 73 So.2d 916 applies.

We quote from the record showing Rainey's testimony on direct examination—in part:

"Q All right. Are there any red marks that were on it [Rainey's shirt] then that aren't on it now?

"A Well, there was chalk.

"Q Chalk?

"A Yes, sir, it was chalk, red chalk.

"Q All right. I want to direct your attention to those red marks on the right shirt pocket and red splotches and spots on it. Do you know what that is?

"A Yes, sir, that's paint.

"Q Paint?

"A Paint.

"Q Where did that come from?

"A On the job we paint gutters and repair gutters and we have to primer them.

"Q All right.

"MR. HORSLEY: Now, we introduce Defendant's Exhibit Number Four in evidence.

> "Thereupon the instrument herein (above marked for identification as (Defendant's Exhibit Number Four ([a shirt] was received in evidence.

\*   \*   \*   \*   \*   \*

"Q I show you what has been marked for identification as Defendant's Exhibit Number Five and ask you what that is.

"A That's chalk we use to roof houses, to mark the lines to follow.

"Q Had you been using any of that kind of chalk that day, that Monday?

"A Yes, sir.

"Q What color is that chalk?

"A It's red.

"Q Would you put some of that chalk on your hands and show what it looks like when you get it on your hands.

**534**

"MR. WRIGHT: Now, Your Honor, we object to this.

"THE COURT: Sustained.

"MR. HORSLEY: Well, wait, don't put it on your hands.

"THE COURT: Sustained.

"MR. HORSLEY: Just throw it on the floor.

"Q At the time you were arrested, state whether or not you had any chalk on your hands and on the back of your hands.

"A Yes, sir, I did.

"Q All right.

"MR. HORSLEY: We would ask the Defendant be allowed to put it on his hands to show what it looks like.

"MR. WRIGHT: Your Honor,—

"THE COURT: Sustain the objection. I never heard of any—

"MR. HORSLEY: The purpose of this is to show it looks exactly like dried blood on one's hands and when it is rubbed in—

"THE COURT: The testimony is that the shirt has been washed.

"MR. HORSLEY: Judge, I'm talking— the police officer testified that he had dried blood on his hands and I want to show that it was not dried blood, it was red chalk he used in his job.

"THE COURT: All right. Go ahead and put the chalk on your hands.

"Q All right. Rub that on the back of your hand. All right, would you show— state whether or not that's the way your hands look after you get through work.

"A Like that—maybe not that—

"Q Maybe not that much, you rub it off a little bit more than that, don't you, that's fresh?

"A Yes, sir.

"Q All right. State whether you had anything besides that red chalk on your hands when you were arrested that night by Sgt. Waller.

"A No, sir, I didn't.

"Q That was all you had on there?

"A Yes, sir.

"Q Did you have any dried blood on your hands?

"A No, sir, I didn't have.

"THE COURT: Does that stuff wash off?

"A Yes, sir, it washes off, not easy.

"THE COURT: Had you washed your hands from the time you got off work that afternoon till 1:00 the next morning?

"A No, sir, I hadn't.

"Q After you wash your hands, you're still able to see some red on there, aren't you?

"A Yes, sir, in the pores of your skin.

"MR. HORSLEY: We introduce into evidence Defendant's Exhibit Number Five.

"MR. WRIGHT: We object to that, Your Honor, it has nothing to do with—

"THE COURT: Sustained.

"MR. HORSLEY: We except. Thought the jury ought to be allowed to look at it themselves."

(Bracketed matter added).

On Rainey's cross-examination we find the following:

"BY MR. WRIGHT:

"Q That chalk there, what is it used for, that Mr. Horsley asked you about?

"A That's what we use to chalk lines on the roof to follow along.

"Q Well, now, how do you do it?

"A. Well, you got a little line rolled up in a box and you stretch it out across there and you pop it and it leaves a line.

"Q. All right. Show the jury there how you use it.

"A. Well, I haven't got the chalk line.

"Q. Well, how do you hold it when you use it?

"A. Well, you—just as here you just pour it in that box. You buy it in this and you put it in a chalk line.

"Q. In a box, and what do you do with it then?

"A. You pull it out and the string comes out of the box and it's sprays chalk, it just throws it all over.

"Q. In other words, it's used for marking lines with?

"A. Yes, sir, that's what it's used for.

"Q. Is it—is this how you say you got it all on your hands there and on your shirt and everything?

"A. That's right."

■ From the foregoing it is clear that the chalk, Defendant's Exhibit 5, was before the jury. It was from the container that the red chalk came which the defendant rubbed on his hands.

The defense hypothesis was that the red substance seen on his hands was not blood but the red roofing chalk. We have examined Defendant's Exhibit 5 which is a plastic container of a shape much like a pyramid with a small spout at the apex which when the box is inverted allows the holder to dispense the powdered red chalk.

We consider that whether or not the container was taken into the jury room was not material to their deliberations. This alone would support the court below.

■ Moreover, we have a rule of practice that where a jury has had adequate autoptic proference of real evidence it is

not strictly needful to make a formal introduction of it in evidence. This in Taylor v. State, 249 Ala. 130, 30 So.2d 256, we find:

"* * * True, there seemed to have been no formal offering of these articles in evidence, but after they were exhibited before the jury and commented upon, to all intent and purposes they are considered as evidence in the cause. Kabase v. State, 31 Ala.App. 77, 12 So.2d 758; Kabase v. State, 244 Ala. 182, 12 So.2d 766."

See also Long v. State, 39 Ala.App. 384, 101 So.2d 94 (G. I. can); Freeman v. State, 46 Ala.App. 640, 247 So.2d 682.

We do not consider that the opinion in Smith v. State, 261 Ala. 270, 73 So.2d 916, applies here.

The application for rehearing is due to be overruled.

Opinion extended; application for rehearing overruled.

ALMON, TYSON and HARRIS, JJ., concur.