324 So.2d 292

**Paul D. YANCEY, alias**

v.

**STATE.**

**7 Div. 301.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 28, 1975.

William J. Baxley, Atty. Gen., and Frank L. Thiemonge III, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Manslaughter, first degree; 10 years.

The indictment charged that:

". . . Paul David Yancey, alias . . . unlawfully and with malice aforethought killed Joseph Cook by shooting him with a pistol . . ."

In support of this indictment the State presented the following evidence:

Phillips & Watson, Anniston, for appellant.

Wanda Cook testified that on September 23, 1972, she and her husband, Joe Cook,

went to the V.F.W. Club in Piedmont, Alabama. It was about 8:30 P.M. when they arrived, accompanied by Kenny, Rosalie, Jerry and Joyce McFry. They were seated at a table on the left of the entrance. Around midnight an argument erupted between Fain McFry and his brother, Jerry, and it continued for about fifteen minutes. She did not see appellant before or during the argument.

The lights were turned on in the ballroom and her husband walked toward the entrance where Fain and Jerry were arguing. As Joe walked into the foyer, Paul Yancey pushed him into a corner. They grabbed one another, and Joe hit the appellant. Joe freed himself and walked with Wanda and Mr. Baker, the manager, to the outside of the building. Mr. Baker then returned to the foyer. In a few minutes Joyce McFry opened the foyer door and said, "Joe, come get Jerry." Joe turned and ran back into the building and Wanda followed. When they re-entered she tried to get him to go back outside. He shoved her into the corner where appellant was standing, and she saw appellant holding a gun. As he fired, she looked around and saw her husband fall.

She stated Joe did not have anything in his hand and was just a few steps from the doorway when he was shot.

The autopsy of the deceased revealed he had been shot in the mouth with a .25 caliber bullet. The projectile had lodged in the back of his mouth, and blood from the wound had gone into his windpipe. In the opinion of Dr. Robert Johnson, the State toxicologist, death was the result of shock and hemorrhage.

A blood specimen revealed deceased had 0.17 percent alcohol content in his blood. Dr. Johnson stated this would make the victim high but not sloppy drunk. Further, a subject with this amount of alcohol in his blood would know where he was but probably not care.

Dr. Johnson stated he test-fired the death weapon and tiny traces of powder were observed up to 18 inches away. Past this point, no powder or residue was detected.

Sergeant Cecil Parris of the Piedmont Police Department, arrived at the V.F.W. Club about 1:00 A.M. and saw Jerry, Fain and Kenny McFry arguing in front of the building. On entering the club, he found the body of Joe Cook lying facedown in the hall. He searched the foyer and found a broken ashtray. In the back part of the building he saw Paul Yancey, who appeared to be sober. At that time appellant gave him the pistol.

Janice McFry testified that on the night in question, she and her husband, Fain, were seated at the table with Joe Cook and his wife. Around midnight her husband and Jerry began to argue. The argument continued and the two proceeded into the foyer. About that time she saw Joe and Wanda Cook walk out of the building with Mr. Baker.

In a few minutes, Joe re-entered the room and looking in appellant's direction, threw up his hands, saying, "There's not anybody going to jump on Jerry." Janice then ran to Joe and grabbed his wrists. Stepping back, she turned and saw appellant, who was about seven feet away, shoot Joe. Nothing was said between the two men before she saw the shooting, and Joe did not have anything in his hands.

Mr. Baker, manager of the V.F.W., testified the club usually closed about 1:00 A.M. Prior to turning the lights on he heard loud arguing at the McFry's table which was located on the opposite end of the building from appellant's. He went to the McFrys in an effort to get them to leave and noticed that Joe Cook was not involved. After the lights were turned on, he began to walk the McFrys in the direction of the main entrance. He then turned

to Joe Cook and, along with Mrs. Cook said, "Joe, let's walk outside." Shortly, Mr. Baker returned to the club and locked the door as he entered the building. The argument was still in progress and he informed the McFrys he was going to call the police. After making the call, he heard a shot. In about 30 or 40 seconds, he reached the foyer and saw Joe Cook lying on the floor. The victim had nothing in his hands and Mr. Baker did not see anything near the body. He did notice a broken ashtray in the corner. About three minutes elapsed from the time he left the victim outside and his call to the police.

Fain McFry testified that after he started arguing with his brother, Mr. Baker came over and asked them to leave. The appellant was not in the foyer when they entered but walked in after Jerry pushed Fain into a table. About that time, the door opened and Joe stepped in. He did not say anything to appellant or make any move, other than throw his hands up, saying, "I wasn't going to jump on Jerry." Fain's wife grabbed Joe's wrists momentarily, and when she stepped back the shot was fired.

The State rested and the defense called Johnnie Baggett.

Mrs. Baggett testified she and her husband were in the appellant's party at the V.F.W. Club. She recalled the disturbance between the McFrys and that she walked over to her cousin, Kenny, to ask that he not get involved. He pushed her into a corner of the foyer, and Paul Yancey came over to her. While they were in the corner, Joe Cook came in the door. He called Paul Yancey a s.o.b. and told him to come outside. Mrs. Baggett saw something shiny in Joe's hand, and as she and her husband moved toward the ballroom, Joe threw whatever it was. The object hit the wall and as she turned, Joe was shot. Mrs. Baggett stated Joe "looked plumb wild."

Paul Yancey, a former policeman, testified that after the disturbance began, he walked to the entrance where a number of people had gathered. His wife followed and as he entered the foyer, Joe Cook grabbed him. They scuffled and Joe hit appellant in the jaw. Mrs. Cook and the manager intervened and took Joe outside. Within minutes, Joe reappeared and someone said, "Watch out, Paul, he has something." Cook then remarked, "Come on, mother ——, and get me," and threw an ashtray at appellant. At that moment someone hit Yancey with a chair, knocking him to his knees. Appellant came up with his pistol and shot Joe Cook.

Yancey stated he had been threatened by the deceased and the last time occurred about two months before the shooting.

Mrs. Yancey testified Joe Cook grabbed her husband by the neck, and she tried to separate them. She left to get help and while she was gone, heard the shot.

Jerry Baggett testified that after Joe Cook went outside, he went to the corner where his wife and appellant were. Almost simultaneously with a banging on the door, Bobby McFry started toward them with a folding chair and Baggett told him to put it down. The door subsequently opened, and Joe Cook came in hollering, "Yancey, you mother ——, come on." Cook threw an ashtray at Yancey and appellant shot him.

I

On or about January 7, 1974, counsel for appellant requested that the case now on appeal not be called until Thursday, January 17, 1974. The request was granted, and the trial did not begin until that day.

Originally, the case had been set for January 14, 1974. On that day the regular and special venires were organized and sworn into service for the upcoming week. Some of the prospective jurors were excused at that time.

Appellant insists that he did not waive his right to be present, and the excusals were error.

■ No objections were made to the venire, and this matter cannot be raised for the first time on appeal. *Ex parte Charles R. Campbell,* 278 Ala. 114, 176 So.2d 242.

"It follows that this matter must be deemed as waived in the absence of any objection prior to trial and is not now to be considered." *Ex parte Campbell,* supra.

■ Excusals of jurors in defendant's presence is not required. *Dean v. State,* 54 Ala.App. 270, 307 So.2d 77.

■ In this case the defendant was present while the jury which heard and decided his case was qualified and chosen. This is the basic right which the law seeks to insure, and in the present case this right was not abused.

## II

After the trial began and while the first witness was being examined, a special prosecutor entered the case. Defendant objected on these grounds:

". . . [T]hat the special prosecutor was not present when the jury was being qualified and the defendant did not have the opportunity to examine the prospective jurors as to any relationship with the special prosecutor . . .

". . . [T]he special prosecutor, was not a licensed attorney in the State of Alabama and had not taken the necessary steps under Alabama law to appear specially in the case . . ."

The trial court overruled the objections, and defendant assigned substantially the same grounds in his motion for a new trial. The motion was overruled, and appellant now insists the trial court's ruling was error.

■ In reference to the contention that the special prosecutor was not qualified before the trial jury, we observe that appellant did not request a re-examination of the jurors nor was any inquiry made of the special prosecutor as to any acquaintance or connection he might have had with members of the jury.

Under these circumstances we do not find the ruling improper. Any prejudice that might have resulted from the special prosecutor's appearance was waived. *Owens v. State,* 40 Ala.App. 36, 109 So.2d 141.

Regarding the second ground of this insistence, appellant argues that this court in *Paul v. State,* 48 Ala.App. 396, 265 So.2d 180, set out the rule for admission of nonresident attorneys. It reads:

" 'ADMISSION OF NON–RESIDENT ATTORNEYS PRO HAC VICE

" 'Any Member of the Bar of another State or jurisdiction, actually engaged in any cause or matter pending in any Court of this State, may be permitted by such Court to appear in and conduct such cause or matter while retaining his residence in another State without being subject generally to the rules regarding admission to the Bar of this State, provided that he first be introduced and recommended to such Court by a member of the Board of Commissioners of the Alabama State Bar, such introduction and recommendation to be either in person or by a written communication, otherwise such attorney may not appear as an attorney in any Court of this State.' "

The purpose of this rule is to insure that there will always be within the jurisdiction of our courts a responsible representative of the action upon whom papers might be served and whom the court might call at any time for information.

■ We do not construe this rule to mean that where a duly elected district attorney is actively engaged in the presenta-

tion of a case and a non-resident attorney appears as a special prosecutor, it is necessary that a formal recommendation be made beforehand.

The district attorney is charged under the Alabama Constitution with the responsibility of prosecuting the offense, and in the instant case he was present during the entire trial. The prosecution was conducted under his supervision, and the appearance of the special prosecutor was under his auspices. The district attorney was available to the court and the defendant's attorney throughout the trial.

This appellant's fundamental right to a fair trial was in no way jeopardized by the appearance of this non-resident attorney as special prosecutor. The court's action was proper.

### III

The evidence recited above was sufficient to make a prima facie case, and the motion for a new trial was properly overruled. *Young v. State,* 283 Ala. 676, 220 So.2d 843.

No error appears in the record.

Affirmed.

TYSON, HARRIS and BOOKOUT, JJ., concur.

CATES, P. J., not sitting.