The defendant was convicted for the first degree murder of James Pickett by shooting him "with a gun". Sentence was fixed at life imprisonment.
The State's evidence revealed that between approximately one and two o'clock on the morning of July 18, 1967, the defendant came to the home of Mr. and Mrs. Willie George Williams exclaiming, "Have mercy", "Come to the door." Mr. Williams opened the door and the defendant handed him a baby which the defendant told him to keep. Mrs. Williams testified that "the baby had blood on it — on its undershirt and blanket she had wrapped around her". Mr. Williams stated that when he asked the defendant what was wrong "he told me that he had killed both of them". Mrs. *Page 1104 
Williams also heard this confession. The defendant admitted to Mr. Williams that he had shot James Pickett and had beaten Barbara Brown to death. The Williamses were next door neighbors of Ms. Brown. Before leaving, the defendant told Mr. Williams "to give him two hours before he called the police".
On February 14, 1977, Special Agent David Hogan of the Federal Bureau of Investigation in Albany, New York, discovered the defendant living in Saratoga Springs, New York, under the alias, Henry Allen Taylor. On that date a warrant was executed against the defendant for unlawful flight to avoid prosecution.
The defendant told Agent Hogan that in 1965 or 1966 Ms. Brown had informed him she was pregnant by him and that consequently he had "set her up" in an apartment in Phenix City, her home town. The defendant stated that he had been constantly "dunned" by Ms. Brown for money and clothing and that in July of 1967 she told him to meet her in Phenix City. On arriving at her apartment he found James Pickett lying on the bed "with a hole in his neck" and Ms. Brown holding a pistol in the living room. As he attempted to administer aid to Pickett, Ms. Brown stabbed him in the neck with a ten inch "barlow" knife and tried to shoot him with a .22 caliber rifle. The defendant told Agent Hogan that "he became incensed with these acts", and wrested the rifle from her and began beating her with it. After beating her, he took the baby to neighbors, informed them that both Pickett and Brown were dead, and fled the state. With some variations, the defendant's testimony at trial was basically the same.
On rebuttal, Mrs. Williams testified that the defendant had come to her home prior to July 18th, when Ms. Brown was there with her baby, and that he had pointed the pistol at Ms. Brown. "(H)e didn't knock or anything. He just burst in and pulled the trigger on her about three times."
 I
The defendant contends that it was error for the trial court to overrule his "motion to quash the venire or in the alternative for plea in abatement to the venire" which was based on the manner in which the talesmen jurors were selected.
The evidence concerning the selection of the talesmen jurors reveals that on September 15, 1977, the regular jury venire consisting of seventy-five jurors was drawn. By September 28, the Circuit Clerk determined that thirty-eight of the original seventy-five jurors had actually been served with notice and had not been excused from service. On September 30th, the trial judge decided to draw an additional twenty talesmen "so that we would have sufficient jurors to go to trial" in the event some were disqualified. All of the talesmen jurors were selected from Beat 1 in Russell County, which includes Phenix City, in order to meet the "five mile" requirement of Alabama Code Section 12-16-102 (1975), which provides for the selection of talesmen in the event of a deficiency in the number of regular jurors competent to try a criminal case. On October 3rd, the day the jury was struck and the trial began in the case against the defendant, thirty-two jurors of the original seventy-five and nine of the twenty talesmen jurors were available for striking. The jury was struck from the entire venire. The number of regular jurors was never reduced below twenty-four.
The defendant questions the selection of the talesmen jurors in two ways: Initially, he maintains that the selection of the additional jurors, which was made strictly from Beat 1 of Russell County to satisfy the five mile requirement, was racially imbalanced when compared to the ratio of blacks to whites for the county as a whole. Secondly, the defendant submits that the trial court was utterly without authority to select the talesmen jurors because at no time was the number of jurors competent to try him from the original seventy-five reduced below twenty-four.
We need not consider the merits of the defendant's argument since the record demonstrates that any prejudice he might have suffered was the result of his own action.
From the record: *Page 1105 
 "THE COURT: At this time I will overrule the motion and the case will stand for trial. Mr. Benton (District Attorney), come around for a moment. While we are here, the Court will on its own motion strike for the purpose of this trial the nine jurors who have appeared this morning which were selected last Thursday. I will on my own motion strike those and allow you to strike from the thirty-five —
 "MR. KIKER (Circuit Clerk): Judge, it would be thirty-two to strike from.
"THE COURT: Thirty-two to strike from.
 "MR. BENTON: The State would give the defendant the option of whichever way they chose if the Court will allow them to. We have no objection either way.
 "THE COURT: We would either let you select from the full panel or the thirty-two who were originally selected.
 "MR. DAVIS (Defense Counsel): Your Honor, may I have just a moment? (Pause) Your Honor, we will take this position: we don't want to waive defect in the procedure that we have filed for here today. We will do this, we will strike from the thirty-two on the original list as long as this remains part of this motion to quash the venire or in the alternative the plea in abatement be reserved as part of the record.
"THE COURT: Is there any objection?
 "MR. BENTON: Under that sort of an arrangement, if it please the Court, frankly he is bringing it up now that he wants to go back to the original drawing and say I still want to reserve my exception of which he is not entitled to.
 "MR. DAVIS: Your Honor, at this point we are challenging the constitutionality of the statute itself as well as the procedure used.
 "THE COURT: Well, I will overrule the motion and we will strike from the entire venire.
 "MR. DAVIS: Is the Court withdrawing the alternative given to the defense counsel?
 "THE COURT: Yes, sir. The Court would withdraw it. . . ."
A defendant cannot by his own voluntary conduct invite error and then seek to profit thereby. Boutwell v. State, 279 Ala. 176, 183 So.2d 774 (1966); Aldridge v. State, 278 Ala. 470,179 So.2d 51 (1965); Buford v. State, 214 Ala. 457, 108 So. 74
(1926); Barber v. State, 151 Ala. 56, 43 So. 808 (1907). "It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice." Aldridge, 278 Ala. at 474, 179 So.2d at 54; Jackson v.State, 38 Ala. App. 114, 116, 78 So.2d 665, cert. denied,262 Ala. 702, 78 So.2d 667 (1955). This is not a situation where a defendant merely remained silent and permitted error to occur.Turner v. State, 54 Ala. App. 467, 309 So.2d 503 (1975).
However, even if the talesmen were improperly selected, the defendant was not entitled to have the entire jury venire quashed. The defendant's objection went to those individual talesmen jurors and not the whole jury panel. Nickerson v.State, 283 Ala. 387, 217 So.2d 536 (1969); Burton v. State,194 Ala. 2, 69 So. 913 (1915); Davidson v. State, 211 Ala. 471,100 So. 641 (1924); Junior v. State, 47 Ala. App. 518, 257 So.2d 844
(1971), cert. denied, 288 Ala. 744, 257 So.2d 852, cert. denied, 407 U.S. 923, 92 S.Ct. 2473, 32 L.Ed.2d 810 (1972). Moreover, we note that the evidence presented by the defendant was insufficient to support a charge of intentional discrimination or systematic exclusion in the selection of the talesmen jurors. Smith v. State, 364 So.2d 1, 11 (Ala.Cr.App. 1978).
For these reasons, the action of the trial court in overruling the defendant's motion was not error.
 II
Next, the defendant contends that it was error for Officer Chappell Ray of the Phenix City Police Department to state his opinion as to how long certain candy wrappers, cake wrappers, and milk cartons, which he found at the scene of the double murder, had been there. *Page 1106 
The day after the murders Officer Ray, in examining the house, discovered two small holes in the ceiling, one in the living room directly over the couch, and one in the bedroom over the bed. Ray climbed into the attic and discovered candy wrappers, cake wrappers and milk cartons next to the two holes. After Officer Ray had testified to these facts the following occurred:
 "Q. (District Attorney): Did you make a determination with regards to the items that you found there whether they had been there for any length of time?
 "A. (Officer Ray): In my opinion they had been there only a short time.
 "MR. DAVIS (Defense attorney): We object to the opinion; there is no predicate laid for that.
 "THE COURT: If he knows that they were there for a lengthy time I will let him answer.
"A. In my opinion they hadn't been there too long.
 "Q. Was there any debris that was edible there around these wrappers?
 "A. Yes, there were crumbs around the wrappers in the ceiling floor where they had been.
 "Q. Were those soft or hard at the time you examined them?
"A. They were soft."
Officer Ray's opinion was admissible because it constituted a "collective fact" or a "shorthand rendition of fact" to which he could properly testify. Wade v. State, 349 So.2d 141, 146
(Ala.Cr.App. 1977). His finding soft crumbs around the wrappers provided a logical basis for his opinion.
 "A witness may testify to his opinion if it is a collective fact or a shorthand rendition of fact. This variety is most commonly referred to as the collective fact exception and arises when the facts observed by the witness are so many or so inexpressible that he is allowed to give the jury his opinion. His opinion is conceived of as being a shorthand way of giving the facts and, consequently does not constitute a violation of the opinion evidence rule." C. Gamble, McElroy's Alabama Evidence, Section 127.01 (3) Variety No. 7 (3rd ed. 1977).
Thus, Officer Ray's opinion was clearly admissible.
 III
The defendant next alleges that the trial court erred in admitting into evidence a cylinder switch or release mechanism from a pistol found at the scene. He contends that the State did not establish a proper chain of custody.
Knowing that the envelope containing the cylinder switch was labeled "one lead bullet" and "one small part of a gun" and that the lead bullet was not in the envelope, defense counsel specifically stated, ". . . I have no objection to the introduction of the cylinder switch". Upon defense counsel's request the trial court refused to admit the envelope into evidence. Counsel also stated that he wanted "to know also what happened to the bullet". Later, after testimony about the switch had been given, the defendant moved to exclude everything contained in the envelope taking the position "that since part of the evidence from that envelope was missing that the whole of the evidence taken from that same envelope was tainted to the extent that its introduction was inadmissible".
The trial court properly overruled the defendant's motion to exclude.
Since no objection was made at the time the cylinder switch was offered into evidence the defendant's objection came too late. Walker v. State, 265 Ala. 233, 90 So.2d 221 (1956);Beckley v. State, 353 So.2d 542, 546 (Ala.Cr.App. 1977). Furthermore, even had the objection been timely interposed, there is no indication that the cylinder switch or other State evidence contained in the sealed package had been tampered with in any way other than the fact that an item of evidence listed as being contained in the envelope was not present. Major Ellis testified the cylinder switch he found at the scene and turned over to Mr. Purnell looked "like the same". The exhibit was under Mr. Purnell's control and custody from the time he received it from Major *Page 1107 
Ellis until it was introduced into evidence. The chain was thus completed.
 "To warrant the reception of an object in evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain. Sexton v. State, 346 So.2d 1177, 1180 (Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977).
We hold, therefore, that the cylinder switch was properly admitted into evidence.
 IV
During the course of the trial the defendant testified at length concerning the alleged neck wound he received from Ms. Brown. He stated that he placed a towel on the wound, that the towel was visible above his shirt collar, and that he had the towel when he left the Williams' home. Near the end of the defendant's cross examination the District Attorney elicited testimony concerning the size of the towel. A towel was shown to the defendant.
 "Q. (District Attorney): You think it is about that size?
 "A. (Defendant): I would say about as wide as this towel here (indicating).
 "Q. About as wide as that towel there? That would be about the size of it?
"A. I would say yes.
 "Q. This is the towel — that size cloth is the same type towel that you stuck in your collar?
"A. I am afraid that it is."
The District Attorney stated that he was not offering the towel into evidence. Under continued questioning the defendant "supposed" that the towel was the approximate size of the one he used but then stated that he did not have "the slightest idea" whether it was the same texture or thickness of the towel that he had. The towel was not offered in evidence.
Defense counsel objected to the towel "being hung on the bulletin board". The trial court allowed the towel to remain on the bulletin board until the conclusion of the trial over the defendant's objection.
Mr. and Mrs. Williams were called on rebuttal and neither had seen any signs of a neck wound on the defendant or of a towel the night he brought the baby to their house and admitted killing Pickett and Brown. The defendant argues that since the towel was not formally introduced into evidence it should not have been allowed to remain in view of the jury. We disagree and hold that as a practical matter the towel was in evidence and was properly allowed to remain on the bulletin board.
"Demonstrative or real evidence, or evidence by inspection, is such evidence as is addressed directly to the senses of the court or jury without the intervention of the testimony of witnesses, as where various things are exhibited in open court." Kabase v. State, 31 Ala. App. 77, 83, 12 So.2d 758, 764
(1943) and authority cited therein. Where the jury has had an adequate view of real evidence it is not strictly needful to make a formal introduction of it in evidence. Smith v. State,344 So.2d 1239, 1241 (Ala.Cr.App.), cert. denied,344 So.2d 1243 (Ala. 1977); Rainey v. State, 48 Ala. App. 530,266 So.2d 335 (1972). "The tenor of its proffer is immaterial. It becomes evidence — the fact it imports — when it is properly identified and exhibited before the jury in open court for their inspection." Kabase, 31 Ala. App. at 83, 12 So.2d at 764. Although the towel had not been formally introduced, the fact that it had been used in connection with the giving of testimony made it evidence in the case which properly remained before the jury. Smith, supra.
 V
The defendant's requested charges concerning circumstantial evidence were refused by the trial court. It is the contention of the defendant that those charges were not covered in the court's oral charge, and considering the evidence in the case, it was necessary that the trial judge explain the use of circumstantial evidence to the jury. *Page 1108 
We cannot agree. The direct evidence in this case, including the defendant's own admissions, is substantial.
As we have held in previous cases on requested charges similar to those presently before us, where not all of the State's case is derived from circumstantial evidence and where the requested charges do not call for consideration of all the evidence, such charges concerning circumstantial evidence are properly refused. Johnson v. State, 55 Ala. App. 581,317 So.2d 548 (1975); Jones v. State, 54 Ala. App. 167, 306 So.2d 33
(1974). Also, the requested charges were not hypothesized on a "belief from the evidence" and were defective for that reason.Thompson v. State, 369 So.2d 50 (Ala.Cr.App.), cert. denied,369 So.2d 52 (Ala. 1979); Hudson v. State, 335 So.2d 208
(Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala. 1976).
After considering each issue presented by the appellant in addition to carefully searching the record, we find no prejudicial error. The defendant's conviction is due to be affirmed.
AFFIRMED.
All Judges concur.