On Application for Rehearing

JOINER, Judge.
This Court’s opinion issued on October 3, 2014, is withdrawn,.and the following is substituted therefor..
Wallace Ray Hulsey was convicted, following A jury trial, of first-degree unlawful manufacture of a controlled substance, see § 13A-12-218, Ala.Code 1975, and reckless endangerment, see § 13A-6-24, Ala.Code 1975. For the unlawful-manufacture-of-a-controlled-substanee conviction, Hulsey was sentenced to 15 years’ imprisonment; that sentence was, split, and he was ordered to serve 3 years in prison, followed by 12 years’ supervised probation. The court also ordered Hulsey to pay a $5,000 fine, a. $50 crime-victims-compensation assessment, a $100 forensic-services-trust-fund fee, and court costs. For the reckless-endangerment conviction, Hulsey was sentenced to one year in prison and was ordered to pay a $50 crime-victims-compensation assessment and court costs. The circuit court ordered that Hulsey’s sentences were to run concurrently.
The evidence presented at trial tended to show that on April. 28, 2009, Officer Nathan Whitman of the Haleyville Police Department -noticed Hulsey driving a truck with an unsecured air-conditioning unit lying on the tailgate, and he attempted to conduct a traffic stop on Hulsey. (R. 54-55.) When Officer Whitman “turned [his] blue lights on,” Hulsey “gunned the *346 vehicle” and drove away “at a high rate of speed” while Officer . Whitman pursued him. (R. 55-57.) Officer Whitman was unable to stop Hulsey, but he and Sgt. Steve Hicks, also of the Haleyville Police Department, eventually located Hulsey’s abandoned truck. (R. 58, 78-79, 82.) Officer Whitman and Sgt. Hicks discovered, in the bed of the truck, ingredients and materials commonly used to manufacture methamphetamine. (R. 82-84.) Haleyville police lieutenant Tim Steien, who testified that he was certified in the dismantling and disposal of methamphetamine laboratories, responded to Hulsey’s truck because of the methamphetamine paraphernalia- found therein. (R. 100-01.) Lt. Steien also found mail addressed to Hulsey inside the truck. (R. 166.)
Hulsey was tried for first-degree unlawful manufacture of a controlled substance, see § 13A-12-218, Ala.Code 1975, attempt to commit a controlled-substance crime, see § 13A-12-203, Ala.Code 1975, and reckless endangerment, see § 13A-6-24, Ala.Code 1975. A jury found Hulsey guilty of the first-degree unlawful-manufacture-of-a-controlled substance and reckless-endangerment charges. Hulsey appeals his convictions and raises several issues. We address each in turn.
I.
Hulsey first claims that his conviction for first-degree unlawful manufacture of a controlled substance is due to be set aside because, he says, he was indicted beyond the statute of limitations for the offense. Specifically, Hulsey argues that the incident giving rise to his prosecution for first-degree unlawful manufacture of a controlled substance, see § 13A-12-218, Ala. Code 1975, occurred on April 28, 2009, and that the indictment for that charge was not returned until June 18, 2013, which, Hulsey argues, is “outside the applicable three (3) year statute of limitations” and “was thus time-barred by Ala.Code § 15-3-1.” (Hulsey’s brief, p. 15.) Hulsey also argues that “the tolling provisions of Ala.Code [1975,] § 15 — 3—6[,] are not applicable because the [i]ndictment did not charge the same offense as any of the previous [(Indictments.” (Hulsey’s brief, p. 15.)
The State contends that Hulsey’s claim with respect to the timeliness of the indictment is not preserved for appellate review. Specifically, the State claims that “Hulsey should be precluded from raising any arguments related to the substituted indictment because he failed to object to the substitution of the indictment at trial.” (State’s brief, p. 19.)
The statute of limitations in a criminal case is an issue that is not subject to the ordinary rules regarding preservation and waiver. See, e.g., Ex parte Campbell, 784 So.2d 323, 325 (Ala.2000); Speigner v. State, 663 So.2d 1024 (Ala.Crim.App.1994); Hines v. State, 516 So.2d 937 (Ala.Crim.App.1987); Cox v. State, 585 So.2d 182 (Ala.Crim.App.1991), cert. denied, 503 U.S. 987, 112 S.Ct. 1676, 118 L.Ed.2d 394.
“Ordinarily, ‘“‘[rjeview on appeal is restricted to questions and issues properly and timely raised at trial.’ ” ’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). However, this Court has held that [the] elaim[ ] [that a trial court does not have jurisdiction to try and convict a defendant because the prosecution did not commence within the applicable statute of limitations] can be raised on appeal.
“ ‘Although Alabama law is not entirely clear on the question whether a court presiding over a prosecution barred by the statute of limitations is without “jurisdiction,” a synthesis of the Alabama cases indicates that a statute of limitations defect must be considered “jurisdictional,” in the *347 sense that the trial court is not authorized to pronounce the accused guilty of the time-barred offense. Notwithstanding the fact that in certain special circumstances where the bar of the statute may be expressly waived when it does not operate in the defendant’s favor, see Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); Hall v. State, 497 So.2d 1145 (Ala.Cr.App.1986), under ordinary circumstances the bar of the statute is not waived by a mere failure to assert it, and the statute of limitations may be properly asserted on appeal or in a petition for post-conviction relief’
“Cox v. State, 585 So.2d 182, 193 (Ala.Crim.App.1991) (emphasis added).”
Money v. State, 138 So.3d 332, 337 (Ala.Crim.App.2012). Thus, a-challenge to,the statute of limitations may be raised for the first time on appeal, and we address Hulsey’s claim.
The grand jury of Winston County indicted Hulsey on four separate occasions for a variety of charges, all arising out of the incident occurring on or about April 28, 2009. (C. 15-16, 29-30, 32-33, 37-38.)

The First Indictment

The original indictment, returned on December 3, 2009, charged Hulsey under count one with attempt to commit a controlled-substanee crime, see § 13A-12-203, Ala.Code 1975, and under count two with reckless endangerment, see § 13A-6-24, Ala.Code 1975.
Count one of the first indictment read:
“The Grand Jury of said county charge that, before the finding of this indictment, Wallace Ráy Hulsey whose name is otherwise unknown to the Grand Jury, did on or about April 28, 2009, with the intent to commit the crime of committing controlled substance crime (Section 13A-12-212 of the Code of Alabama) attempt to knowingly and unlawfully commit said offense of manufacturing methamphetamine, in violation of Section 13A-12-203 of the Code of Alabama.”
(C. 16.) Section 13A-12-203, Ala.Code 1975, provides, in relevant part, that “[a] person is guilty of an attempt to commit a controlled substance crime if he engages in the conduct defined in Section 13A-4-2(a), and the crime attempted is a controlled substance crime.” Section 13A-4~2(a) states that “[a] person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.”
Count two of the first indictment read: “The Grand- Jury of said county further charge that, before the finding of this indictment, Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did recklessly engage in conduct by driving recklessly at a high rate of speed while having a meth lab inside his vehicle, which created a substantial risk of serious physical injury to motorists in violation of Section 13A-6-24 of the Code of Alabama.”
(C.16.) Section 13A-6-24, Ala.Code 1975, provides, in relevant part, that “[a] person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.”

The Second Indictment

The second indictment, returned on September 20, 2011, charged Hulsey under count one with second-degree unlawful manufacture of a controlled substance, see § 13A-12-217, Ala.Code 1975, and purported to charge him under count two with reckless endangerment, see § 13A-6-24, Ala.Code 1975.
*348 Count one of the second indictment read:
“The Grand Jury of said County charge that, before the finding of this indictment, Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did on or about April 28, 2009, manufacture methamphetamine to-wit: did possess one pot cook,[1] alcohol, drain opener, cloth filters, pill grinders, plastic funnels, fertilizer and salt, in violation of Section 13A-12-217 of the Code of Alabama.”
(C.30.) Section 13A-12-217, Ala.Code 1975, provides, in relevant part:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following:
“(1) Manufactures a controlled substance enumerated in Schedules I to V, inclusive.
“(2) Possesses ' precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.”
Count two of the second indictment read:
“The Grand Jury of county further charge that, before, the finding of this indictment, Wallace Ray Hulsey whose name is otherwise unknown. to the Grand Jury, did on or about April 28, 2009, with the intent to commit the crime of committing controlled substance crime (Section 13A-12-212 of the Code of Alabama) attempt to knowingly and unlawfully commit said offense of manufacturing methamphetamine, in violation of Section 13A-12-203 of the Code of Alabama.”
(C. 30.)
In actuality, count two of the second indictment charged Hulsey with attempting to commit a controlled-substance crime, see § 13A-12-203, Ala.Code 1975. Although labeled as “reckless endangerment,” the language of count two of the second indictment tracks the language of and cites the statute for attempting to commit a controlled-substance crime, see § 13A-12-203, Ala.Code 1975. Moreover, the language of count two is identical (except for the word “further”) to the count-one language in the December 3, 2009, indictment charging Hulsey with attempt to commit a controlled-substance crime. Thus, the second indictment did not charge Hulsey with reckless endangerment. (C. 29-30.)

The Third Indictment

The third indictment, returned on December 5, 2011, purported to charge Hul-sey under count one with second-degree unlawful manufacture of a controlled substance, see § 13A-12-217, Ala.Code 1975, and under count two with reckless endangerment, see § 13A-6-24, Ala.Code 1975.[2]
Count one of the third indictment read:
*349 “The Grand Jury of said County charge that Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did on or about April 28, 2009, with the intent to commit the crime of unlawful manufacture of a controlled substance, 2nd degree (Section 13A-12-217(a)(l) of the Code of Alabama) attempt to knowingly and unlawfully commit said offense of manufacturing methamphetamine, to-wit: did possess a one pot cook, alcohol, drain opener, coffee filters, pill grinders, plastic funnels, fertilizer and salt in violation of Section 13A-12-203 of the Code of Alabama.”
(C. 33.)
Count two of the third indictment read:
“The Grand Jury of said County charge that, Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did recklessly engage in conduct by, to-wit: driving recklessly at a high rate of speed while having a meth lab inside his vehicle, which created a substantial risk of serious physical injury to motorists in violation of Section 13A-6-24 of the Code of Alabama.”
(C. 33.)
In actuality, count one of the third indictment charged Hulsey with attempting to commit a controlled-substance crime, see § 13A-12-203, Ala.Code 19751 Although labeled as “unlawful manufacture of controlled substance, second degree,” the language of count one of the third indictment tracks the language of and cites the statute for attempt to commit a controlled-substance crime, see § 13A-12-203, Ala.Code 1975. Thus, the third indictment did not charge Hulsey with second-degree unlawful manufacture of a controlled substance. (C. 32-33.)

The Fourth Indictment

The fourth and final indictment, returned on June 18, 2013, charged Hulsey under "count one with first-degree unlawful manufacture of a controlled substance, see § 13A-12-218, Ala.Code 1975, under count two with attempt to commit a controlled-substance crime, see § 13A-12-203, Ala. Code 1975, and under count three with reckless endangermerit, see § 13A-6-24, Ala,Code 1975.
Count one of the fourth indictment read:
“The Grand Jury of said County charge that, Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did, on or about, April 28, 2009, manufacture a controlled substance enumerated in Schedules I, II, III, or IV, or did possess precursor substances as determined in Section 20-2-181 of the Code of Alabama 1975 to-wit: one pot cook, alcohol, drain opener, coffee filters, pill grinders, plastic funnels, fertilizer and salt, in any amount with the intent to unlawfully manufacture a controlled substance and did therefore illegally possess a firearm, or a clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school, or a clandestine laboratory operation was for the production of a controlled substance listed in Schedule I or Schedule II, or a person under the age of 17 was present during the manufacturing process, in violation of Section 13A-12-218 of the Code of Alabama.”
(C. 38.) Section 13A-12-218, Ala.Code 1975, provides, in relevant part:
*350 “(a) A person commits the crime of unlawful manufacture of a controlled substance in the first degree if he or she violates Section 13A-12-217 and two or more of the following conditions occurred in conjunction with that violation:
“(1) Possession of a firearm.
“(2) Use of a booby trap.
“(3) Illegal possession, transportation, or disposal of hazardous or dangerous materials or while transporting or causing to be transported materials in furtherance of a clandestine laboratory operation, there was created a substantial risk to human health or safety or a danger to the environment.
“(4) A clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school.
“(5) A clandestine laboratory operation actually produced any amount of a specified controlled substance.
“(6) A clandestine laboratory operation was for the production of controlled substances listed in Schedule I or Schedule II.
“(7) A person under the age of 17 was present during the manufacturing process.”
Count two of the fourth indictment reads as follows:
“The Grand Jury of said County charge that, Wallace Ray Hulsey, whose name is otherwise known to the Grand Jury, did, attempt to commit the crime of manufacturing methamphetamine by having in his possession certain items used to produce methamphetamine, to-wit: one pot cook, alcohol, drain opener, coffee filters, pill grinders, plastic funnels,- fertilizer and salt, in violation of Section 13A-12-203 of the Code of Alabama.”
(C. 38.)
Count three of the fourth indictment read:
“The Grand Jury of said County charge that, Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did recklessly engage in conduct by, to-wit: driving recklessly at a high rate of speed while having a meth lab inside his vehicle, which created a substantial risk of serious physical injury to motorists in violation of Section 13A-6-24 of the Code of Alabama.”
(C. 38.)
At all relevant times in this ease, § 15-3-1, Ala.Code 1975, provided that “[t]he prosecution of all felonies, except those specified in Sections 15-3-3 and 15-3-5, must be commenced within three years after the commission of the offense.”[3] Section 15-3-7 provides: “A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender.”
Initially, we note that, in addressing Hulsey’s statute-of-limitations claims, the parties have addressed only when the indictments were returned against Hulsey, not the date of his arrest on May 28, 2009, one month after the offenses were committed. Section 15-3-7 indicates that “the issuing of a warrant” commences a prosecution. In Griffin v. State, 352 So.2d 847 (Ala.1977), the Alabama Supreme Court *351 stated, regarding the predecessor to § 15-3-7, Ala.Code 1975:
“The date of the ‘commencement’ of the prosecution is the date of the issuing of the warrant. Tit. 15, § 225, Code; Richardson [v. State, 215 Ala. 318, 111 So. 204 (1926)]; and Sherrod v. State, 14 Ala.App. 57, 71 So. 76 (1916). This is true even though a subsequent indictment is found, as long as the same offense is charged in both. Jackson v. State, 106 Ala. 136, 17 So. 349 (1894).”
352 So.2d at 850 n. 2 (emphasis added).
The record does not include a copy of an arrest warrant; therefore, we do not know whether that warrant included the charges on which Hulsey was subsequently indicted. Under the particular facts of this case, however, it would make no difference because, even assuming an arrest warrant was issued for Hulsey charging him with first-degree unlawful manufacturing of a controlled substance, he was not indicted for that offense in the first indictment returned on December 3, 2009; indeed, he was not indicted for first-degree unlawful manufacturing of a controlled substance until the fourth indictment, which was returned on June 18, 2013.[4] Consequently, our analysis of Hulsey’s claim regarding the statute of limitations assumes that no arrest warrant was issued.
Also relevant to this case are the “tolling” provisions of the Alabama Code and the Alabama Rules of Criminal Procedure. Section 15-3-6, Ala.Code 1975, provides:
“When an indictment is lost, mislaid or destroyed, when a judgment is arrested or an indictment quashed for any defect'therein, for the reason that it was not found by a grand jury regularly organized, because it charged no offense or for any other cause or when the prosecution is dismissed because of a variance between the allegations of the indictment and the evidence and a new indictment is ordered to be preferred, the time elapsing between the preferring of the first charge or indictment and the subsequent indictment must be deducted from the time limited for the prosecution of the offense last charged.”
Rule 15.5(c), Ala. R.Crim. P., states that
“[t]he running of the time prescribed by an applicable statute of limitations shall be tolled by the issuance of the charging'instrument until such time as the court grants a motion to dismiss based on a defect in the commencement of the proceedings of the charge, unless the court in granting a motion finds that the state has not made a good faith effort to proceed properly and that the defendant has been prejudiced by any resulting delay.”
Conversely, a void indictment will not toll the statutory limitations period for the return of a subsequent indictment. Zimlich v. State, 872 So.2d 881 (Ala.Crim.App.2003). “[A]n indictment returned af ter the expiration of the limitations period of a statute is void.” Ex parte Campbell, 784 So.2d 323, 325 (Ala.2000).
Moreover, an indictment cannot be amended to change the offense of the previous indictment. See Green v. State, 619 *352 So.2d 952 (Ala.Crim.App.1993) (holding that, even with the defendant’s consent, an indictment could not be- amended to change the charge of burglary to a charge of receiving stolen property); Washington v. State, 562 So.2d 281 (Ala.Crim.App.1990) (holding that it was reversible error for the trial court to permit a district attorney to amend an indictment to change the charge from robbery to hindering prosecution, which was not a lesser-included offense of robbery).
Furthermore, the Supreme Court of Alabama has held that an original charging instrument is nullified by a subsequent indictment. Ex parte Russell, 643 So.2d 963 (Ala.1994); see also Hansen v. State, 598 So.2d 1, 2 n. 1 (Ala.Crim.App.1991) (holding that the indictment originally returned against the defendant had been superseded -by a subsequent indictment). Consequently, a subsequent indictment that changes an offense of a previous indictment is not an amendment to the previous indictment; it is a new indictment that supersedes, nullifies, and replaces the previous indictment.
Although the State argues that Hulsey did not preserve this claim for review, issues with respect to the statute of limitations, as noted above, are matters not subject to the ordinary rules regarding preservation and waiver. The State asks us to overrule Money v. State, 138 So.3d 332 (Ala.Crim.App.2012), and Cox v. State, 585 So.2d 182 (Ala.Crim.App.1991), “to the extent that [those cases] suggest that a defendant need not preserve objections to the limitations period in order to receive appellate review.” (State’s brief, p. 20.') .Those cases, however, are consistent with Alabama Supreme Court precedent. See Ex parte Ward, 46 So.3d 888 (Ala.2007); Ex parte Hutcherson, 847 So.2d 386 (Ala.2002); Ex parte Campbell, 784 So.2d 323 (Ala.2000). “This Court is bound by the decisions of the Alabama Supreme Court and has no authority to overrule those decisions.” Kelley v. State, [Ms. CR.-10-0642, Sept. 5, 2014] — So.3d -, - (Ala.Crim.App.2014). Therefore, we cannot overrule Money or Cox, as the State requests. Thus, the fact that Hulsey did not object to the timeliness of the fourth indictment with respect to the first-degree-unlawful-manufacture-of-a-controlled-substance charge is irrelevant. Hulsey is not precluded from raising that issue on appeal, and his claim, therefore, is properly before this Court.
The récord indicates that the offense giving rise to Hulsey’s prosecution occurred on April 28, 2009. Notwithstanding any applicable tolling of the statute of limitations, any felony prosecutions brought against Hulsey must have been commenced within three years of the offense. The prosecution against Hulsey for first-degree unlawful manufacture of a controlled substance, see § 13A-12-218, Ala.Code 1975, did not commence 'until a grand jury returned the fourth indictment on June 18, 2013. That indictment fell outside the three-year statutory limitations period.
Upon reviewing the language of each indictment, we conclude that only the fourth indictment includes the essential elements of the offense of first-degree unlawful manufacture of a controlled substance that are enumerated in § 13A-12-218 arid that' are necessary when alleging that offense- in an indictment. To the extent-that the first three indictments were an attempt to charge first-degree unlawful manufacture of a controlled substance, those indictments were void as to that offense because they failed to include the essential elements. Because the previous indictments did not charge first-degree unlawful manufacture of a controlled substance, none of them tolled the statute of *353 limitations as to that offense. Consequently, the State’s indictment of Hulsey for- that charge on June 18, 2013, was not commenced within the statutory period.
Furthermore, the charge of first-degree unlawful manufacture of a controlled substance against Hulsey was not included as an amendment to the third indictment, as the State also argues (see State’s brief, pp. 19-20). The fourth indictment brought a new; more serious offense than the offenses with which Hulsey had previously been' charged. Even in instances where charges have been downgraded to offenses that are less severe than those-previously included in the indictment, this Court has held that such a change does not constitute an amendment. See Green, 619 So.2d 952; Washington, 562 So.2d 281. In addition, the fourth indictment was a new indictment returned by a grand jury and not simply an attempt by the State to amend the third indictment.
Because the fourth indictment was a new indictment, it superseded, nullified, and replaced the previous indictments. Russell, 643 So.2d 963; Hansen, 598 So.2d at 2 n. 1. Any charges that were not properly carried over into' the fourth indictment from the third indictment were, in effect,"nolle prossed or dismissed. The third indictment charged Hulsey with attempt to commit a controlled-substance crime, see § 13A-12-203, Ala.Code 1975, and reckless endangerment, see § 13A-6-24, Ala.Code 1975; neither first- nor second-degree unlawful manufacture of a controlled substance, see §§ 13A-12-217 and 13A-12-218, was included in the third indictment. Because the charge of first-degree unlawful manufacture of a controlled substance in. the fourth indictment was void, Hulsey’s .conviction for first-degree unlawful manufacture of a controlled substance is also, void and must be reversed.
The State argues that, in the event this Court, reverses Hulsey’s conviction for first-degree manufacture of a controlled substance, Hulsey should be convicted of the lesser-included offense of second-degree unlawful manufacture of a controlled substance. Notably, although the fourth indictment-did not specifically charge Hul-sey .with second-degree unlawful manufacture of a controlled substance, that charge is- a lesser offense included, within the charge of first-degree manufacturing of a controlled substance and would, therefore, have been included in count one of: the fourth indictment if that count had. been timely returned by the grand jury. See Rule 13.2(c), Ala, R.Crim. P. (“Specification of an offense in an indictment or information shall- constitute a charge of that offense and of all lesser included offenses necessarily included therein.”).
The time between the commission of the offense and the return of the second indictment, which charged Hulsey with second-degree unlawful manufacture of a controlled substance, totaled 2 years, 145 days. The statute of limitations was tolled from the date the, second indictment was returned, until the date the third indictment was returned, which totaled 76 days. The time between the third indictment and the fourth indictment totaled 1 year, 195 days. Accordingly, the total time not tolled pursuant to § 15-3-1; Ala.Code 1975, between the commission of the offense and the fourth indictment was 3 years, 350 days, which would be outside the statute of limitations unless, as the State contends, the third indictment also tolled the statute of limitations for the offense of second-degree unlawful manufacture of a controlled substance.
As -noted above, count one of the third indictment is labeled “unlawful manufacture of controlled substance, second degree,” but (he language under that count *354 tracks the language of and cites only the statute for attempt to commit a controlled-substance crime, see § 13A-12-203, Ala. Code 1975. In its application for rehearing, the State’s position is that the mere labeling of count one of the third indictment as “unlawful manufacture of controlled substance, second degree” was sufficient to toll the statute of limitations as to that offense. The State’s position on rehearing, in essence, is based on the argument that Ex parte Seymour, 946 So.2d 536 (Ala.2006), and subsequent cases applying that decision have overruled, for all purposes, cases such as Zimlich, supra, that use the word “void” to describe an indictment that fails to charge an essential element of an offense. See, e.g., Zimlich, 872 So.2d at 885 (“[I]f the first indictment was an attempt to charge first-degree perjury, it failed to charge an essential element of .the offense, materiality, and was, therefore, void.”).
The State’s position is correct in that, since Zimlich was decided, Ex parte Seymour and subsequent decisions have clarified that an indictment that fails to charge an essential element of an offense is not “void” in the sense of affecting the subject-matter jurisdiction of the circuit court. In Ex parte Seymour, the Alabama Supreme Court stated:
“Jurisdiction is ‘[a] court’s power to decide a case or issue a decree.’ Black’s Law Dictionary 867 (8th ed.2004). Subject-matter jurisdiction concerns a court’s power to decide certain types of cases.... That power is derived from the Alabama Constitution and the Alabama Code.... In deciding whether Seymour’s claim properly challenges the trial court’s subject-matter jurisdiction, we ask only whether the trial court had the constitutional and statutory authority to try the offense with which Seymour was charged and as to which he has filed his petition for certiorari review.
“Under the Alabama Constitution, a circuit court ‘shall exercise general jurisdiction..in all cases except as may be otherwise provided by law.’ Amend. No. 328, § 6.04(b), Ala, Const.1901. The Alabama Code provides that ‘[t]he circuit court shall have exclusive original jurisdiction of all felony prosecutions....’ §12-11-30, Ala. Code 1975. The offense of shooting into an occupied dwelling is a Class B felony. § 13A-11-61(b), Ala.Code 1975. As a result, the State’s prosecution of Seymour for that offense was within the circuit court’s subject-matter jurisdiction, and a defect in the indictment could not divest the circuit court of its power to hear the case.
“The United States Supreme Court has long held that ‘defects in an indictment do not deprive a court of its power to adjudicate a case.’ [United States v.] Cotton, 535 U.S. [625] at 630, 122 S.Ct. 1781 [(2002)]....”
946 So.2d at 538.
Thus, Ex parte Seymour stands for the proposition that a defective indictment may nevertheless invoke the subject-matter jurisdiction of the circuit court, and, if the particular defect is not objected to in a timely manner, the defect will be waived and will not provide a basis for setting aside the conviction based on that indictment.
Even after Ex parte Seymour, however, this Court and the Alabama Supreme Court have continued to refer to statutes of limitations as a “jurisdictional” matter. In Ex parte Ward, 46 So.3d 888 (Ala.2007), the Alabama Supreme Court noted that this Court had “conflated statutes of limitations with procedural limitations periods such as the one in Rule 32.2(c)[, Ala. R.Crim. P.].” The Alabama Supreme Court *355 in Ex parte Ward clearly distinguished procedural limitations periods from statutory limitations periods on criminal prosecution. Procedural limitations are affirmative defenses subject to the ordinary rules regarding waiver. Statutory limitations periods in a criminal prosecution, however, are “jurisdictional” — not in the sense of affecting the subject-matter jurisdiction of the circuit court but in the sense of not being subject to the ordinary rules of preservation and waiver.[5]
In this regard, this Court has stated:
“ ‘Instead of alleging that the circuit court had no subject-matter jurisdiction over the conspiracy prosecution, it is more accurate to state that, once the court was shmm that the prosecution was barred by the statute of limitations, the court had no “jurisdiction to try the question of the guilt or innocence of the accused. ” Serfass v. United States, 420 U.S. [377] at 391, 95 S.Ct. [1055] at 1064 [(1975)], (quoting Kepner v. United States, 195 U.S. 100, 133, 24 S.Ct. 797, 806, 49 L.Ed. 114 (1904)).’ ”
Money v. State, 138 So.3d 332, 337 (Ala.Crim.App.2012) (quoting Cox v. State, 585 So.2d 182, 193-94 (Ala.Crim.App.1991)).
If Hulsey had been convicted of second-degree unlawful manufacture of a controlled substance based on the third indictment, which was a timely indictment, Ex parte Seymour arguably would permit that conviction to survive a Rule 32, Ala. R.Crim. P., postconviction challenge to the circuit court’s subject-matter jurisdiction over the case.
This case, however, presents a different question because the third indictment was, under caselaw. from this Court and the Alabama Supreme Court, superseded and replaced by the fourth indictment. On rehearing, the State argues that “[i]t is inconsistent to conclude that a new indict-. ment could simultaneously be a nullity and yet also render otherwise-valid prior indictments null as well.” (State’s brief in support of reh’g, p. -18.) The State’s characterization of the third indictment as “otherwise valid” is somewhat misleading, however, in that as- to the charge' of “second degree unlawful manufacture óf a controlled substance,” the third indictment' was, at best, defective. Furthermore,' our holding is not, as the State suggests, that the entire fourth indictment is a “nullity.” Rather, our holding is that count one of the fourth indictment is a nullity because the offense alleged in that count was untimely charged under the applicable statute of litnitations. The other counts of that indictment,' which carried over of-fénses present in one or more of the previ-’ ous indictments, were not untimely and are hot “nullities.”
Ultimately, we are not persuaded by the State’s argument that Ex parte Seymour overruled cases such as Zimlich and Ex parte Campbell insofar as those cases suggest that the statute of limitations may not be tolled by a defective indictment that is, *356 at the State’s request, superseded by a subsequent indictment. Thus, in the instant case, count one of the third indictment did not toll the statute of limitations as to the charge of second-degree unlawful manufacture óf a controlled substance when the third indictment was nullified and superseded by the fourth indictment under which Hulsey was convicted in this case. See Ex parte Russell, 643 So.2d 963; see also Hansen, 598 So.2d at 2 n. 1.
Accordingly, as to the charge of second-degree unlawful manufacture, of a controlled substance, , the time between the commission of the offense and the commencement of prosecution that had. not been tolled pursuant to § 15-3-1, Ala.Code 1975, totaled 3 years, 350 days. Thus, the prosecution against Hulsey for the lesser-included charge of second-degree unlawful manufacture of a controlled substance fell outside the three-year statutory limitations period. Because the only offenses for which Hulsey was properly indicted at the time of his .trial were attempting to commit а. controlled-substance crime, see § 13A-12-203, Ala.Code 1975, and reckless endangerment, see § 13A-6-24, Ala.Code 1975, [6] this Court does not have the authority to enter a judgment finding Hulsey guilty of second-degree unlawful manufacturing of a controlled substance, see § 13A-12-217, Ala. Code 1975,
Because Hulsey’s first-degree-unlawful-manufacture-of-a-controlled-substance conviction is reversed, the remaining issues addressed will be only with respect to Hul-sey’s reckless-endangerment conviction.
II.
Hulsey contends that his “conviction for reckless endangerment was not supported by sufficient evidence.”[7] (Hulsey’s brief, p. 36.) He specifically claims that “there is a lack of evidence indicating that [his] driving behavior was ‘reckless’ or that it ‘created a substantial risk of serious physical injury to another person.’” (Hulsey’s brief, pp. 36-37.) Furthermore, Hulsey contends that “the State’s evidence, taken in the light most favorable to [the prosecution], still did not establish that Hulsey was in constructive possession of any of the items in the truck.” (Hulsey’s brief, p. 30.)
“The issue of the sufficiency of the evidence is preserved for review by a defendant’s motion for a judgment of acquittal that is entered at the end of the state’s case, at the close of the evidence ..., or after the verdict is entered.” Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Crim.App.1993).
“ ‘ “The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Crim.App.1978). In applying this standard, this court will de *357 termine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Crim.App.1983).” ’ ”
Hollaway v. State, 979 So.2d 839, 843 (Ala.Crim.App.2007) (quoting Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), quoting in turn Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992) (citations omitted)).
“ ‘In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.’ Faircloth v. State, 471 So.2d 485, 489 (Ala.Crim.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
[[Image here]]
“ ‘ “The role of the appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to' the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding; and judgment are wrong.” Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied. Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).’
“Granger [v. State], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989).
Hulsey was indicted for and convicted of reckless endangerment under § 13A-6-24, Ala.Code 1975, which states that “[a] person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person.” With respect to the reckless-endangerment charge, the final indictment returned against Hulsey read:
“The Grand Jury of said County charge that, Wallace Ray Hulsey, whose name is otherwise unknown to the Grand Jury, did recklessly engage in conduct by, to-wit: driving recklessly at a high rate of speed while having a meth lab inside his vehicle, which created a substantial risk of serious physical injury to motorists in violation of Section 13A-6-24 of the Code of Alabama.”
(C. 38.)
. At the close of the State’s case, at which point Hulsey also rested his case, Hulsey moved the trial court for a judgment of acquittal on the grounds: (1) that there were 30 minutes between the time Officer Whitman last saw Hulsey and the -time that officers located the .truck; (2) that the State did not establish that Hulsey owned or controlled the truck;, and, (3) that the State .did not establish that Hulsey owned, controlled, or constructively possessed the meth lab. (R. 290-92.) The,trial court denied Hulsey’s motion. (R. 292.)
In his brief, the only argument Hulsey realleges from his motion for a judgment of acquittal is that the State did not present sufficient evidence to establish that he was in constructive possession of *358 any of the items discovered in the truck. (Hulsey’s brief, p. 30.) Thus, we do not address the claims Hulsey raised in his motion for a judgment of acquittal that were not also included in his brief. See Rule 45B, Ala. R.App. P. (“In those criminal cases in which the death penalty has not been imposed, the Court of Criminal Appeals shall not be obligated to consider questions or issues not presented in briefs on appeal.”); Hoppins v. State, 451 So.2d 365 (Ala.1983). Moreover, Hulsey’s claim that the State presented insufficient evidence that his driving was reckless or that it created a substantial risk of serious physical injury to another person (Hulsey’s brief, pp. 36-37) was not presented to the trial court in his motion for a judgment of acquittal and, therefore, is not preserved for review. See Ex parte Frith, 526 So.2d 880, 882 (Ala.1987) (holding that “[t]he statement of specific grounds of objection waives all grounds not specified”).
At trial, the State presented evidence that Officer Whitman saw , Hulsey driving a truck and that, when Officer Whitman attempted to conduct a traffic stop, Hulsey accelerated quickly and continued to speed away as Officer Whitman pursued him. Officer Whitman and Sgt. Hicks subsequently located the truck Officer Whitman had seen Hulsey driving. Lt. Steien, who was certified in and had extensive experience with methamphetamine laboratories, found, in the truck, materials and ingredients commonly used to manufacture methamphetamine. Lt. Steien also found- inside the truck- mail addressed to Hulsey.
Accepting such evidence as true, according the State all legitimate inferences therefrom, and considering the evidence in the light most favorable to the prosecution, the State presented evidence legally sufficient to submit to the jury the question whether Hulsey was in constructive possession of the items found in the truck. Hulsey’s argument, therefore, is without merit, and he is not entitled to relief on this, claim.
III.
Hulsey next claims that he “is entitled to a new trial because the trial court did not perform its imperative duty to properly qualify the venire.”[8] (Hulsey’s brief, p. 18.) Specifically, Hulsey contends that .the trial court “failed to ask the prospective jurors if they had served on the [September 2011] grand jury that returned one of the four indictments against [him].” (Hulsey’s brief, p. 18.)
The record .affirmatively demonstrates that, in Hulsey’s presence, the trial court asked the'prospective jurors if any of them had served on the grand juries that had returned the indictments in December 2009, December 2011, or June 2013.
Section 12-16-6, Ala.Code 1975, states that “[i]t is the duty of the court, before administering the oath prescribed by law to any grand, petit or tales jurors, to ascertain that such juror possesses the qualifications required by law, and the duty required of the court by this section shall be considered imperative.” As this Court has heldj however,
“[w]hile the terms of this.section do ... make this qualifying process ‘imperative,’ the appellate courts of this state have never held that an objection to a possibly unqualified venire may be raised at any point during or subsequent *359 to the proceedings below. Instead,- the prevailing rule, as enunciated by this Court in Andrews v. State, Ala. Cr.App., 359 So.2d 1172 (1978), provides that:
“ ‘If counsel is to question or object to the jury venire, he must do so prior to the impanelling and swearing in of the jury. Failure to make a timely objection waives the right to question the jury’s qualifications, and appellant may not complain for the first time on motion for new trial nor on appeal to this court. Douglas v. State, 50 Ala. App. 602, 281 So.2d 652 (1973); Yancey v. State, 56 Ala.App. 577, 324 So.2d 292 (1975); Hurley v. State, Ala. Cr.App., 341 So.2d 494 (1976), cert. denied, Ala., 341 So.2d 497 [(1977)].’ ”
Durden v. State, 394 So.2d 967, 975 (Ala.Crim.App.1980).
Hulsey concedes that “no objection was made as to the jury’s qualifications.” (Hulsey’s brief, p. 19 n. 4.) Therefore, we question whether this issue is preserved for review. Hulsey, however, contends that “it is the duty of the trial court to disqualify all jurors not having general qualifications, whether challenged or not, see Maund v. State, 254 Ala. 452, 458, 48 So.2d 553 ([Ala.] 1950).” (Hulsey’s brief, p. 19 n. 4.) Hulsey further argues that, “the trial court’s failure to do so deprives the jury of the right to pass judgment,” and he asks this. Court to distinguish his case from Durden. (Hulsey’s brief, p. 19, n. 4.)
In Durden, the appellant also claimed that the trial court failed to properly qualify the venire. 394 So.2d at 974. Durden “was not present when the members of the venire were excused,” and he claimed that the trial court “did not comply with the demands of § 12-16-6, Code of Alabama 1975, in asking of the entire venire those items contained in § 12-16-150, Code of Alabama 1975.”[9] 394 So.2d at 974. Although the trial court offered to “recall the venire and satisfy any doubts that [Durden] had,”. Durden declined that offer. 394 So.2d at 975. This Court held that Durden’s “presence or lack thereof [was] immaterial, for the excusal of jurors is not required to be in the presence of the accused except in capital cases,” and that the record was silent with respect to whether the trial court had complied with the duty set forth in § 12-16-6, Ala.Code 1975. Id.
In the present case, Hulsey was present for the qualification of the venire, and he failed to object to what he claims was the trial court’s neglect in ensuring that jurors complied with a more significant qualification than those at issue in Durden. As in Durden, the record is silent as to whether the trial court performed its imperative duty with respect to qualifying potential jurors — in this case, specifically, whether the trial court determined that any potential jurors served on the September 20, 2011, grand jury that returned an indictment against Hulsey. Because this was not a capital case, Hulsey’s presence was immaterial and because, as we explain below, the trial court is presumed to have complied with § 12-16-6, Ala.Code 1975, this case is not distinguishable from Durden.
“[T]he Supreme Court in Washington v. State, 81 Ala. 35, 1 So. 18 [ (1887) ], said:
“ ‘But very many things occur in the trial of-such causes of which no record need be made, and yet they require affirmative action of-the court, or of some ministerial officer. Ascertaining the qualifications of jurors is an example of this class of judicial ques *360 tions, and service of a copy of the venire, and of the indictment on the defendant, is an illustration of ministerial service of which the silence of the record raises no presumption of error. If such duty be omitted, the objection must be shown to have been taken in the court below. When the record is silent on questions of these classes, this ' court presumes the trial court and its officers did their duty.’
“See also Winn v. State, 44 Ala.App. 271, 207 So.2d 138 [(1968)].”
Douglas v. State, 50 Ala.App. 602, 606, 281 So.2d 652, 656 (Ala.Crim.App.1973) (emphasis added).
The record in this case is silent as to whether the trial court ascertained that any potential jurors were subject to disqualification because théy had served on the grand jury that indicted Hulsey in September 2011. The trial court, therefore, is presumed to have fulfilled its imperative duty pursuant to § 12-16-6, Ala. Code 1975, see Douglas, supra, and Hulsey’s claim is without merit.
IV.
Hulsey next claims that “[t]he trial court exceeded its discretion when it failed to grant [him] relief from the State’s noncompliance with outstanding discovery requests.” [10] (Hulsey’s brief, p. 20.) Specifically, Hulsey argues that the trial court erred in denying his motion for a continuance; he asserts that “the alleged evidence that was not timely disclosed to the defense was highly prejudicial and complex scientific evidence that was based on a ‘new’ method of scientific testing.” (Hulsey’s brief, pp. 20, 22.)
The record indicates that the State, through the Alabama Department of Forensic Sciences, conducted two different scientific tests for determining whether methamphetamine was present on the coffee filters found in Hulsey’s truck. (R. 3-5.) The first test did not detect conclusively the presence of methamphetamine. (R. 4, 6.) The second test, which involved a method referred to as the “DART” test, confirmed the presence of methamphetamine on the coffee filters. (R. 4-7.) On June 7, 2013, the district attorney orally informed Hulsey’s defense counsel of the results of the DART test. (R. 9-10.) Hulsey’s defense counsel, however, did not receive a written report of the DART test results until the afternoon of Friday, September 6, 2013 — four days before the trial was to take place on Tuesday, September 10, 2013 — even though it appears he had personally requested the report from the district attorney’s office.[11] ’(R. 4, 12; C. 5, 26-28.)
On September 6, 2013, before receiving the written report, Hulsey filed a motion in limine requesting that the State be precluded from referencing any scientific tests or results thereof promulgated within the preceding six months. (C. 48-49.) At a hearing on that motion held immediately preceding his trial, Hulsey argued, that the results of the DART test should be excluded because, he said, they were derived from a new method of testing and they were provided too late for Hulsey to “evaluate the science behind this test.” *361 (R. 4, 12.) Hulsey then requested a continuance on the same grounds.[12] (R. 13-14.) The trial court denied the motion to continue but also stated that, after it had heard the testimony of the expert who performed the DART test,'if it determined “that additional discovery needs to be done on behalf of [Hulsey], then at that time [it would] re-entertain a [m]otion to [continue.” (R. 14-15.) Although Hulsey later renewed his motion in limine and objected to the admission of evidence concerning the DART test, he never renewed his motion to continue. (R. 171-73, 200-01, 234.)
““‘Review on appeal is restricted to questions and issues properly and timely raised at trial.” Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). “An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.” Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). “ ‘[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support- thereof.’ ” McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). “The statement of specific grounds of objection - waives all grounds not specified, and the trial court will not be put in error on, grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).’ ”
Kidd v. State, 105 So.3d 1261, 1263-64 (Ala.Crim.App.2012) (quoting Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala.2003) (emphasis added)). “ ‘A defendant is bound by the grounds of objection he stated at trial and may not expand those grounds on appeal.’ Davis v. State, 440 So.2d 1191, 1194 (Ala.Cr.App.1983), cert. denied, 465 U.S. 1083, 104 S.Ct. 1452, 79 L.Ed.2d 770 (1984) (citations omitted).” Cole v. State, 548 So.2d 1093, 1096-97 (Ala.Crim.App.1989). Furthermore, this Court has held that it “will not review the merits of a motion presented by the appellant at trial unless the court below had issued a ruling adverse to the appellant on the motion. Knight v. State, 623 So.2d 376, 379 (Ala.Cr.App.1993).” Knight v. State, 936 So.2d 544, 546 (Ala.Crim.App.2005).
Athough Hulsey moved for a continuance and the trial court denied his motion, the grounds he stated in support of that motion are not the same grounds he argues on appeal. Hulsey requested a continuance from the trial court because, he said, he did not receive the written report of the DART test results in sufficient time before trial to research the science involved in the test. On appeal, Hulsey now argues that his defense counsel, in support of the motion to continue, “established that the evidence he expected to acquire if a continuance [was] granted was material and competent, and that he had exercised due diligence. Further, there was a probability that evidence would have been forthcoming in the form of a defense expert had the trial court granted a continuance.” (Hulsey’s brief, pp. 21-22.) In the motion to continue he made immediately preceding his trial, JEiulsey did not state the specific grounds that he now raises in his brief. Hulsey simply claimed that he was entitled to a continuance because, he said, the delay in receiving the written test report hampered his ability to research the methodology of the test. Moreover, the trial court invited Hulsey to renew his motion to continue during trial, but, although Hulsey had ample opportunity to do so, he failed to renew that motion. *362 Therefore, we question whether the new grounds asserted on appeal are properly before us, and we question whether this issue is preserved for review.
Even if Hulsey’s motion had been preserved on the grounds stated in his brief, however, his claim would, nevertheless, be without merit.
“ ‘ “ ‘[I]n Alabama, our courts have always held it is discretionary with the trial court whether it should halt or suspend the trial to enable a party to secure or produce witness in court.... And, in the exercise of that discretion the trial court is not to be reversed save for gross abuse of discretion. Alonzo v. State ex rel. Booth, 283 Ala. 607, 610, 219 So.2d 858, 861 (1969). In Ex parte Saranthus, 501 So.2d 1256 (Ala.1986), the Alabama Supreme Court addressed the issue of a pretrial continuance:
“ ‘ “ ‘A motion for a continuance is addressed to the discretion of the court and the court’s ruling on it will not be disturbed unless there is an abuse of discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973). If the following principles are satisfied, a trial court should grant a motion for continuance on the ground that a witness or evidence is absent: (1) the expected evidence must be material and competent; (2) there must be a probability that the evidence will be forthcoming if the case is continued; and (3) the moving party must have exercised due diligence to secure the evidence. Knowles v. Blue, 209 Ala. 27, 32, 95 So. 481, 485-86 (1923).’
“ ‘ “Saranthus, 501 So.2d at 1257. ‘ “ ‘There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.” Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).’ Glass v. State, 557 So.2d 845, 848 (Ala.Cr.App.1990).
“ ‘ “The reversal of a conviction because of the refusal of the trial judge to grant a continuance requires “a positive demonstration of abuse of judicial discretion.” Clayton v. State, 45 Ala.App. 127, 129, 226 So.2d 671, 672 (1969).’ Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.1979). A ‘positive demonstration of abuse of judicial discretion’ is required even where the refusal to grant the continuance is ‘somewhat harsh’ and this Court does not ‘condone like conduct in future similar circumstances.’ Hays v. State, 518 So.2d 749, 759 (Ala.Cr.App.1985), affirmed in part, reversed on other grounds, 518 So.2d 768 (Ala.1986).”
“‘McGlown v. State, 598 So.2d 1027, 1028-29 (Ala.Crim.App.1992).
“ ‘ “ ‘Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burdens counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances.’ ”
“ ‘Price v. State, 725 So.2d 1003, 1061 (Ala.Crim.App.1997), quoting Morris v. Slappy, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). See also *363 Sullivan v. State, 989 So.2d 58, 66 (Ala.Crim.App.2006) (“‘As a general rule, continuances are not favored,’ In re R.F., 656 So.2d 1237, 1238 (Ala.Civ.App.1995), and ‘[o]nly rarely will [an] appellate court find an abuse of discretion’ in the denial of a motion for a continuance.”).’ ”
Woodward v. State, 123 So.3d 989, 1017-18 (Ala.Crim.App.2011) (quoting Gobble v. State, 104 So.3d 920, 940 (Ala.Crim.App.2010)).
In considering Hulsey’s motion to continue, the trial court was afforded broad discretion, especially because Hulsey did not satisfy the requirements established in Ex parte Saranthus, 501 So.2d 1256 (Ala.1986), that would have warranted granting the motion for a continuance. Hulsey merely argued that he needed more time to research the test. He did not argue that he expected to discover new evidence or to obtain an expert witness, much less that any new evidence would be competent and material. Hulsey did not argue that there was a probability that any new evidence or witnesses would be forthcoming if the ease was continued. Finally, Hulsey’s counsel did not argue that he had exercised due diligence attempting to obtain an expert witness. Although he argued that he exercised due diligence in obtaining the DART test report, Hulsey’s claim on appeal is not with respect to the report, but instead with respect to “evidence he expected to acquire,” specifically “in the form of a defense expert.” (Hul-sey’s brief, pp. 21-22.) Hulsey’s argument, therefore, is without merit, and he is not entitled to relief on this claim.
V.
Hulsey next claims that the trial court erred “when it admitted into evidence the results based on the DART method of analysis.”[13] (Hulsey’s brief, p. 23.) Specifically, Hulsey contendS'that “the DART method was not proven to meet the criteria for admissibility of expert scientific evidence set forth in Ala.Code § 12-21-160.”
As discussed above, Hulsey filed a motion in limine requesting that the State’s DART test evidence be excluded on the grounds that it was not timely provided to Hulsey’s defense counsel, which, he said, prevented him from conducting research necessary to understand the test. Hulsey also renewed his motion during the testimony of two of the State’s expert witnesses. During the testimony of Dale Carpenter, a deputy director of the Alabama Department of Forensic Sciences, Hulsey’s defensé counsel stated:'
“Judge, I’d also ’ like to remind the Court of my earlier Motion in Limine, reminding the Court that I received the written information on this new process on Friday afternoon, and I would like to preserve my request for this new' process and this new test not to be presented to the jury because of the late discovery, Your Honor.”
(R. 173, 200 (emphasis added).) The trial court denied the motion and reminded defense counsel to renew the motion should it determine that other expert witnesses were not qualified to testify regarding the DART test. (R. 200-01.) Hulsey renewed his motion in limine twice more during the testimony of Andrea Headrick, a drug-chemistry-discipline chief at the-Alabama Department of Forensic Sciences', when he objected to the State’s offering of the writ *364 ten report of the DART tests results and a sample of tested coffee filters. (R. 223, 234, 239-40.)
“An appellant who suffers an adverse ruling on a motion to exclude evidence, made in limine, preserves this adverse ruling for. post-judgment and appellate review only if he objects to the introduction of the proffered evidence and assigns specific grounds therefore at the time of the trial, unless he has obtained the express acquiescence of the trial court that subsequent objection to evidence when it is proffered at trial and assignment of grounds therefore are not necessary.”
Ex parte Jackson, 33 So.3d 1279, 1284 (Ala.2009). “ ‘ “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not. assigned..at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).’ Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala.2003).” Kidd v. State, 105 So.3d 1261, 1265 (Ala.Crim.App.2012).
On appeal, Hulsey now argues that the DART method of analysis did not comply with. the standards set forth in § 12-21-160, Ala.Code 1975. Section 12-21-160, Ala.Code 1975, provides:
“(a) Generally. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
“(b) Scientific evidence. In addition to requirements set forth in subsection (a), expert testimony based on a scientific theory, principle, methodology, or procedure is only admissible if:
“(1) The testimony is based on sufficient facts or data,
“(2) The testimony is the product of reliable principles and methods, and.
“(3) The witness has applied the principles and methods reliably to the facts of the case.”
Athough Hulsey objected to admission of the DART test results, he did so solely on the grounds that the results were not provided to him in a timely manner. He did not argue that any of the experts were unqualified or that their testimony would not be helpful. He also did not argue that the test was not “based on sufficient facts or data,” was not “the product of reliable principles and methods,” or that any witnesses had not “applied the principles and methods reliably to the facts of the case.” § 12-21-160, Aa.Code 1975. Therefore, the grounds that Hulsey now raises on appeal are waived, and this .issue is not preserved for review.
VI.
Finally, Hulsey contends that “the cumulative errors in the case, including all errors addressed [in his brief] have probably injuriously affected [his] substantial rights to a fair trial.”[14] (Hulsey’s brief, p. 38.) Specifically, Hulsey claims that “[e]ven if this Court believes that no single error discussed [in his brief] is ‘sufficiently prejudicial to require reversal under Aa. R.App. P. 45,’ the accumulated errors in this case have affected Hulsey’s substantial rights.” (Hulsey’s brief, p. 38.) Hulsey sets forth the allegedly cumulative errors as follows: (1) the trial court “failed to [properly] qualify the jury”; (2) the trial court “severely prejudiced [him] by denying him a continuance to prepare to meet *365 expert scientific testimony introduced by the State”; and, (3) “although the expert scientific testimony and evidence did not meet the criteria required for admissibility, the trial court admitted it anyway.” [15] (Hulsey’s brief, p. 38.) .
As discussed above, none of Hulsey’s individual claims has been preserved for review. See Issues III, IV, and V, supra. Thus, we cannot also review them as a part of his contention that, cumulatively, they affected his substantial rights to a fair trial. Moreover,
“[a]s the Alabama Supreme Court has stated, ‘when no one. instance .amounts to error at all (as distinguished from error not sufficiently prejudicial to be reversible), the cumulative effect cannot warrant reversal. In other words, multiple nonerrors obviously do not require reversal’ Ex parte Ferguson, 814 So.2d 970, 980 (Ala.2001) (Johnstone, J., concurring specially).”
McGahee v. State, 885 So.2d 191, 219-20 (Ala.Crim.App.2003). The issues Hulsey raises in his brief with respect to this claim did not amount to error. Therefore, Hulsey is not entitled to relief on this issue.
APPLICATION OVERRULED; OPINION OF OCTOBER 3, 2014, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WELCH and BURKE, JJ., concur.
KELLUM, J., concurs specially.
WINDOM, P.J., concurs in the result..

. At trial, the State presented evidence indicating that a “one pot cook" was used in manufacturing methamphetamine.

. Although Hulsey does not raise a statute-of-limitations argument with respect to his reckless-endangerment conviction, we note that Hulsey's prosecution for that charge was commenced within the applicable statute of limitations. Section 15-3-2, Ala.Code 1975, provides that "the prosecution of all misdemeanors before a circuit or district court must be commenced within 12 months after the ’ commission of the offense.” The time between the commission of the offense and the first indictment for reckless endangerment totaled 216 days. The statute of limitations was tolled from the date the first indictment was returned until the date the second indictment was returned. The statute of limitations began to run again from the date the *349 second indictment was returned until the date the third indictment was returned; the time between those two events totaled 76 days. The time between the commission of the offense and the commencement of prosecution that had not been tolled pursuant to § 15-3-6, Ala.Code 1975, totaled 292 days.

. Effective April 8, 2014, this section was amended to extend the statute of limitations to five years.

. In other words, assuming there was an arrest warrant charging Hulsey with first-degree unlawful manufacturing of a controlled substance, the December 3, 2009, indictment — which did not charge Hulsey with first-degree unlawful manufacturing — would have superseded the arrest warrant, and the statute of limitations as to that offense would have begun to run again. See, e.g., Ex parte Russell, 643 So.2d 963 (Ala.1994); see abo Hansen v. State, 598 So.2d 1, 2 n. 1 (Ala.Crim.App.1991) (holding that the indictment originally returned against the defendant had been superseded, by a subsequent indictment); and Griffin.v. State, 352 So.2d , 847 (Ala.1977).

. As noted above, there is at least one instance in which a defendant may waive a statute of limitations if it " ‘does not operate in the defendant’s favor.’ ” Money, 138 So.3d at 337 (quoting Cox, 585 So.2d at 193). In Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), which this Court cited in Cox, the United States Supreme Court upheld a trial court’s refusal in a capital-murder case to instruct the jury on lesser-included offenses for which the statute of limitations had run; specifically, the trial court refused to instruct the jury on those lesser-included .offenses because the defendant in that case refused to waive the. statute of limitations as a defense. 468 U.S. at 456-57. A defendant’s ability to waive the statute of limitations in that circumstance is consistent with the idea that the "jurisdictional” descriptor applied to the Statute of limitations does not *356 refer to the “subject-matter jurisdiction” of the court.

б. The trial court instructed the jury that, in the event it returned a guilty verdict on either . the first- or second-degree-unlawful-manufacture-of-a-controlled-substance charge, it was not to return a verdict as to the attempt-to-commit-a-controlled-substance charge. Consistent with those instructions, the jury never returned a verdict on the attempt-to-commit-a-controlled-substance charge, and the State does not ask us to enter a judgment with respect to that charge.

. This issue appears in Hulsey’s brief as Issue V, and he raises it with respect to both convictions. Because we are reversing his first-degree-unlawful-manufacture-of-a-controlled substance conviction, we address this issue solely in regard to his reckless-endangerment conviction.

. This issue appears in Hulsey's brief as Issue II, and he raises it with respect to both convictions. Because we reverse his first-degree-unlawful-manufacture-of-a-controlled substance conviction, we address this issue solely in regard to his recldess-endangerment conviction.

. Section 12-16-150 provides general grounds for challenging potential jurors for cause. The grounds set forth in that section include, among other things, residency, age, capacity, relationship to the parties, and criminal history.

. This issue appears in Hulsey’s brief as Issue III, and he raises it with respect to both convictions. Because we reverse his first-degree-unlawful-manufacture-of-a-controlled-substance conviction, we address this issue solely in regard to his reckless-endangerment conviction.

. The record is silent as to when or how frequently Hulsey’s defense counsel requested the written report of the DART test from the district attorney’s office.

. Hulsey's oral motion to continue was not included with the previously filed written motion in limine.

. This issue appears in Hulsey’s brief as Issue IV, and he raises it with respect to both convictions. Because we reverse his first-degree-unlawful-manufacture-of-a-controlled-substance conviction, we address this issue solely in regard -to his reckless-endangerment conviction.

. Hulsey raises this issue with respect to both convictions. Because we reverse his first-degree-unlawful-manufacture-of-a-controlled-substance conviction, we address this issue solely in regard to his recldess-endan-germent conviction.

. Hulsey also claims that he "was put to trial even though the statute of limitations had expired as to the most serious charge of manufacturing.” (Hulsey’s brief, p. 38.) Because we reverse Hulsey's first-degree-unlawful-manufacture-of-a-controlled-substance conviction, and because Hulsey's claim that it was error to commence prosecution beyond the statute of limitations applies only to that charge, we do not consider that specific claim in our review of the alleged errors he asserts as cumulative with respect to his reckless-endangerment conviction.